## Demolition of Health Nuisances

RENO, Attorney General, September 18, 1939.—This department is in receipt of your recent communication requesting our opinion concerning the power of the board of health in cities of the third class in this Commonwealth to order demolition of real property.

The answer to your inquiry is to be found in the provisions of The Third Class City Law of June 23, 1931, P. L. 932.

Sections 2325 and 2335 of the said act (53 PS §12198-2325 and §12198-2335) provide as follows:

"Section 2325. Nuisances;Examination;Abatement.— The board of health as a body or by committee, or the health officer, together with his subordinates, assistants and workmen under and by order of said board, may

enter, at any time, upon any premises in the city upon which there is suspected to be any infectious disease or nuisance detrimental to the public health, for the purpose of examining and abating the same. All written orders for the removal of nuisances, issued to the health officer by order of the board of health, attested by the secretary, shall be executed by him and his subordinates and workmen. The costs and expenses of the removal of nuisances shall be recoverable from the owner or owners of the premises from which the nuisance shall be removed, or from any person or persons causing or maintaining the same. The amount of the cost and expense thereof shall be a lien upon the premises which has caused, or from which the nuisance shall be removed, from the time of the commencement of the work, which date shall be fixed by certificate of the health officer filed with the city clerk. Such lien may be filed and proceeded in as provided by law in the case of municipal liens. . . .

"Section 2335. Conditions Dangerous to Life or Health to be Declared Nuisances; Order to Abate.—Whenever any building, erection, excavation, premises, business, pursuit, matter or thing, or the sewerage, drainage, or ventilation thereof, in the opinion of the board of health, either in whole or in part, is in a condition or in effect dangerous to life or health, the board may declare the same, to the extent it may specify, to be a public nuisance and dangerous to life and health, and may order the same to be removed, abated, suspended, altered, or otherwise improved or purified, and shall cause said order, before its execution, to be served on the owner, agent, occupant or tenant thereof or some of them, if said parties or any of them are in such city and can be found. If the party so served shall, before its execution is commenced, apply to said board to have said order or its execution stayed or modified, the said board shall temporarily suspend or modify said order and give to such party or parties together, as the case, in the opinion of the board, may require a reasonable and fair opportunity to be heard before

said board, and to present proofs and facts against said declaration and the execution of said order, or in favor of its modification. The board shall enter upon its minutes such facts and proofs as it may receive and its proceedings on such hearing, and thereafter may rescind, modify or reaffirm its said declaration and order and require execution of said original or of a new or modified order, to be made in such form and effect as it may finally determine."

It is apparent, therefore, that by virtue of the aforesaid statutory provisions the board of health as a body or by committee, or the health officer of the city under and by order of the said board, may enter, at any time, upon any premises in the city upon which there is suspected to be any nuisance detrimental to the public health, for the purpose of examining and abating the same. Having caused an investigation to be made as aforesaid, the board of health may, when in its opinion the said building, either in whole or in part, is in a condition or in effect dangerous to life or health, declare the same, to such extent as the circumstances and conditions may warrant, to be a public nuisance and direct that the same be removed, abated or altered.

Having thus decided that a nuisance exists, the board is required, before any action is actually taken to abate the same, to serve a copy of its order upon the owner or occupant of the property. The party so served is then entitled to apply to the board for a stay or modification of its order and, if this be done, the board is required to allow the owner or occupant reasonable and fair opportunity to present such facts as would entitle him to relief. An opportunity is thus offered to the owner of the property to vindicate the condition of his building and, if successful, he can prevent a summary destruction thereof.

An examination of the law pertaining to this subject discloses that these provisions of The Third Class City Law, supra, are not new but, in substance, are virtually a restatement of similar legislation dating back as far as the year 1818. By the provisions of the Act of January 29,

1818, P. L. 5, sec. 27, the Board of Health of the City of Philadelphia was vested with the power "to cause all offensive or putrid substances, and all nuisances which may have a tendency in their opinion to endanger the health of the citizens, to be removed . . .".

Although we have been able to find no judicial construction of the aforesaid provisions of The Third Class City Law which is directly in point or controlling of the subject here under discussion, the section of the Act of 1818, supra, has, on several occasions, been construed by the appellate courts of this Commonwealth.

In Kennedy v. The Board of Health, 2 Pa. 366 (1845), the Board of Health of the City of Philadelphia issued a writ of scire facias on a municipal claim for removing a nuisance on defendant's property. On appeal to the Supreme Court it was complained that the lower court had erred in refusing to permit defendant to prove the cause of the nuisance. At page 369 it is said:

"It is not easy to perceive the relevancy of such evidence, unless it was intended to show by it, that there was in reality no nuisance to be removed. But this latter could not be proved, for the act of Assembly on the subject, as recited above, makes the order of the board conclusive, that the nuisance did exist, and expressly enacts that the fact of the nuisance shall not be inquired into. The board decided that the nuisance existed on the lot of the defendant, and the *fact* being so determined, it made no difference from what cause it arose; it was necessary and proper that it should be removed. The evidence was therefore properly rejected."

Again, in the case of Paris v. Philadelphia, 63 Pa. Superior Ct. 41 (1916), the court held that, by virtue of the provisions of the Act of 1818, supra, as amended, the Board of Health of the City of Philadelphia is vested with quasi-judicial authority to decide what constitutes nuisances and all presumption favors its action; that the summary action upon notice by the board in the abatement of the nuisance does not contravene the constitu-

tional rights regarding private property but is a necessary exercise of police power; and that the preservation of the public health is uniformly recognized as one of the paramount objects of government and a most important municipal function. The language of the court, at page 54, is particularly significant:

"The general rule has been laid down that a court of equity, upon an application for an injunction to restrain a Board of Health from the summary abatement of what it has adjudged to be a public nuisance, detrimental to the public health, will decline to restrain the proposed action of the board, unless it is made to appear clearly that the board has acted in bad faith, or has transcended its jurisdiction, and the rule has been broadly laid down that an injunction will be denied when the jurisdiction conferred on the board is summary in its nature and the procedure proper,—since the objects to be attained by its exercise would be defeated in many cases, if the orders of the Board of Health were subject to judicial examination and revision before they could be carried into effect, and that a court of equity even if it has the power will not, except upon good cause shown, interfere in the measure taken by public officials to protect the public health: . . .".

See also Dare v. City of Harrisburg et al., 16 D. & C. 22 (1930).

Although, as hereinbefore indicated, there are no reported cases in this Commonwealth construing or concerning the sections of The Third Class City Law above quoted, it should, however, be noted that in Tri-Cities Water Co. v. Monessen, 313 Pa. 83 (1933), the Supreme Court recognizes the right of a municipality to exercise the extraordinary powers conferred by the said act where the public health is to be protected. At page 86 the court says:

"It [the municipality] could have proceeded under the Act of June 23, 1931, P. L. 932, which provides in article XXIII, section 2325, that the expense of removing a nuisance shall be a lien upon the premises causing it, and

shall be recoverable from the owner or owners of the property, or from any person or persons causing or maintaining the nuisance."

In view of the foregoing authorities, we are of the opinion, and you are advised, that the board of health in a city of the third class has the power to order the demolition of any house or building if, in the opinion of the board, the said house or building is in such condition as to constitute a public nuisance; and, in the exercise of this power, neither the board nor the municipality is required to compensate for the damage resulting from the taking of the property or the abatement of the nuisance, provided, of course, it acts strictly in accordance with the provisions of The Third Class City Law of June 23, 1931, P. L. 932. The power conferred by the aforesaid act, however, is extraordinary and no board of health should take any action which is arbitrary or capricious or prompted by improper motives and which would result in any injustice to the owner or occupant of the property so taken.